SAMUEL BROOKS WARZYN,

                  Plaintiff,

v.                                              Case No. 23-cv-533-pp

DWILETTE ARCHER
and DCI MEDICAL STAFF,

                  Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND ALLOWING PLAINTIFF TO FILE AMENDED COMPLAINT**

      Samuel Brooks Warzyn, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On September 7, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $0.03. Dkt. No. 11. The court warned the plaintiff that his failure to pay the $0.03 initial partial filing fee could result in dismissal of his case without further notice. Id. at 4. The court has not received the $0.03 initial partial filing fee. But because the fee is so small, the court will not dismiss the case and instead will waive the plaintiff's requirement to pay an initial partial filing fee. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee but will require him to pay the full $350 filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d

2

Case 2:23-cv-00533-PP   Filed 10/27/23   Page 2 of 11   Document 12

714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint names as defendants Dwilette Archer at Milwaukee Secure Detention Facility (MSDF), where the plaintiff previously was

incarcerated, and "D.C.I. Medical Staff." Dkt. No. 1 at 1. The court infers that DCI is short for Dodge Correctional Institution.

The plaintiff alleges that on February 27, 2023, he was incarcerated at MSDF and "had an altercation" with two other incarcerated persons. Id. at 2. He says the two men attacked him and injured or broke his right hand and left wrist. Id. The plaintiff underwent at x-ray at Aurora hospital, and hospital staff wrapped the plaintiff's hands and arms and scheduled him for a follow-up visit with orthopedic specialists. Id. The plaintiff says he received casts for his hands and arms on March 3, 2023, and defendant Archer "sent [him] to DCI Infirmary." Id. The plaintiff alleges that Archer falsely said that the plaintiff's wounds were self-inflicted. Id. He says that he "would be strapped down or put on observation for self harm if [he] did this [him]self." Id. The medical staff at DCI returned the plaintiff to MSDF on March 16, 2023, and falsely said the plaintiff "could 100% use [his] hands." Id.

The plaintiff says that, in fact, he "could barely use utensils to eat," and he "could barely wipe [his] buttocks." Id. He says he was not able to clean himself properly after using the bathroom because of his injuries and could not shower on his own because his casts would get wet. Id. He complains about "the fingerfood," describing it as "50%–50 one minute it's fingerfood one minute it's rice, vegetables, and small chunks of chicken." Id. at 2–3. The plaintiff says the finger foods he was given should have been "chicken pattys [*sic*], chicken nuggets, chips, apples, oranges, stuff big, not stuff [he] need[s] a utensil to eat." Id. at 3. The plaintiff says he wrote to the Health Services Unit and the kitchen

about his issues. Id. He says he has not showered since his return from DCI, and "it has really tooken [*sic*] a toll on [him]." Id. The plaintiff alleges that "nobody is trying to help [him]." Id.

The plaintiff seeks $100,000 in damages, which he says he would use "to pay off [his] hospital bills where [he] got institution restitution." Id. at 4.

C. Analysis

The plaintiff's allegations amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer, 511 U.S. at 834). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff says that both of his hands were injured or broken during a fight, and he had casts on both hands and arms. He says this limited his daily activities, including eating, using the bathroom and showering. The Seventh Circuit has held that "the presence of a medical condition that significantly affects an individual's daily activities" constitutes a "serious medical need"

5

Case 2:23-cv-00533-PP   Filed 10/27/23   Page 5 of 11   Document 12

under the Eighth Amendment. See Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997) (quotation omitted). The court finds that, for the purpose of screening the plaintiff's complaint, his allegations about his hand and arm injuries that required weeks of wearing casts satisfy the objective component of an Eighth Amendment claim. See Davis v. Samalio, 286 F. App'x 325, 328 (7th Cir. 2008) (assuming that plaintiff's "fractured wrist qualifies as a serious medical need" under Eighth Amendment); Brison v. Wellpath, LLC, Case No. 1:21-CV-12016-AK, 2023 WL 2495729, at *3 (D. Mass. Mar. 14, 2023) (allegations that plaintiff's hand was "disfigured and immobilized" following altercation satisfied objective component of Eighth Amendment claim).

But the court cannot determine from the complaint whether the plaintiff satisfies the subjective component against either named defendant. The complaint alleges that Archer sent the plaintiff to the infirmary at Dodge (DCI), but it is not clear whether that was punishment or an attempt to protect the plaintiff because of his injuries. He alleges that Archer falsely said that the plaintiff had injured himself, rather than that he was injured in a fight. But he does not say who Archer said this to. The plaintiff says he would be strapped down or placed on observation status if he actually had harmed himself. But he does not allege that he *was* strapped down or placed on observation status or, if he was, if that occurred *because of* Archer's comments. The complaint does not make clear whether Archer's comments led to any consequences for the plaintiff. If they did not cause the plaintiff any harm, Archer's false comments alone do not violate the Eighth Amendment. See Lisle v. Welborn,

6

933 F.3d 705, 719 (7th Cir. 2019); Beal v. Foster, 803 F.3d 356, 357–58 (7th Cir. 2015).

The complaint similarly alleges that DCI medical staff falsely reported that the plaintiff had recovered full use of his hands when the plaintiff returned to MSDF. He says that he did not have full use of his hands and could not use utensils, clean himself or shower. But the complaint does not make clear whether the plaintiff faced these difficulties while he was at the DCI infirmary. Nor is it clear to whom DCI medical staff made the allegedly false comments or whether DCI medical staff made the allegedly false statements while the plaintiff was at DCI or when they returned him to MSDF. The plaintiff alleges only that since returning to MSDF, he has had difficulty with certain activities and has received no help. DCI medical staff cannot be held liable under §1983 for the failure of MSDF staff to assist the plaintiff because they were not personally involved in that conduct. See Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003) (citing Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996)). But the plaintiff does not name anyone at MSDF as a defendant, and it is not clear whether he wants to bring a claim against anyone who works there.

Regardless of the claim the plaintiff wants to bring against DCI medical staff, the court will not permit him to proceed against that defendant. A plaintiff may bring a lawsuit under §1983 only against a person or persons. The "staff" of a prison or a prison unit is not a proper defendant because it is not a person that may be sued under §1983. See Cash v. Marion Cnty. Jail,

211 F. App'x 486, 488 (7th Cir. 2006) (affirming district court's dismissal of suit naming jail "staff" as defendants); Gray v. Weber, 244 F. App'x 753, 754 (8th Cir. 2007) (affirming dismissal of prisoner's §1983 complaint against defendants identified "only collectively as 'medical staff'"). The plaintiff may use a John or Jane Doe placeholder if he does not know the name of the person or persons he wishes to sue. But he cannot broadly name the entire staff of a prison as a defendant.

The court finds that the complaint as written does not state a claim against any viable defendant. But it is possible that the plaintiff's complaint about his wrist or hand injuries and the improper care he says he received could state a claim against one or more defendants. Because the plaintiff may be able to state a claim by providing additional detail, the court will give him an opportunity to amend his complaint to correct the deficiencies noted and better explain his claims.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who (what person or persons) violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

8
Case 2:23-cv-00533-PP   Filed 10/27/23   Page 8 of 11   Document 12

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive it* by the end of the day on **November 30, 2023**. If the plaintiff files an amended complaint in time for the court to receive it by November 30, 2023, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not

9

receive an amended complaint by November 30, 2023, the court will dismiss the case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$350** filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court includes with this order a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 27th day of October, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**